**Scott G. Seidman,** OSB # 83320
    Direct Dial:    503.802.2021
    Direct Fax:    503.972.3721
    E-Mail:       scott@tonkon.com
Tonkon Torp LLP
1600 Pioneer Tower
888 SW Fifth Avenue
Portland, OR  97204-2099

    Of Attorneys for Plaintiff Videx, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

Eugene Division

| | |
|---|---|
| VIDEX, INC., an Oregon Corporation<br><br>**PLAINTIFF,**<br><br>v.<br><br>CYBER ACCESS CONTROL, LLC, a California Limited Liability Company<br><br>**DEFENDANT.** | Civil No.  06-CV-06280-TC<br><br>**FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF (SHERMAN ACT § 2, CLAYTON ACT § 2(a), CONTRACT LAW)** |

For its Amended Complaint, plaintiff Videx, Inc. alleges as follows:

**JURISDICTION**

**1.**

This is a declaratory judgment action brought under 28 U.S.C. § 2201.  This case arises under the laws of the United States, namely, the Sherman Antitrust Act, 15 U.S.C. § 2, and the Clayton Act, 15 U.S.C. §§ 13(a), 15(a), and 25.  The Court has jurisdiction for the first and second claims pursuant to 28 U.S.C. § 1331.  The court has supplemental jurisdiction for the third claim, a state law claim which forms part of the same case or controversy as those claims over which the Court has original jurisdiction, pursuant to 28 U.S.C. § 1367.

## VENUE

**2.**

Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that a substantial part of the events giving rise to the claims occurred in this judicial district.

## PARTIES

**3.**

Plaintiff Videx, Inc. ("Videx") is an Oregon Corporation with its principle place of business in Corvallis, Oregon. One of its businesses, and the business that is subject to this dispute, is the design and manufacturing of an electronic access control system known as the CyberLock®.

**4.**

Defendant Cyber Access Control, LLC ("CAC") is a California limited liability company with its principle place of business in Winter Park, Florida. CAC is a reseller of access control systems and has become a CyberLock® reseller.

## FACTS COMMON TO ALL CLAIMS

**5.**

Videx introduced CyberLock® in the Spring of 2000. CyberLock® is a durable electronic lock cylinder that receives its power from a key. The CyberLock® system converts existing mechanical locks into an access control system. Through electronic lock cylinders, programmable CyberKeys, and CyberAudit software, the CyberLock® system provides owners with the ability to track and control access to every lock in the owner's facility.

/////

/////

/////

/////

/////

Page 2 – **FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF (SHERMAN ACT § 2, CLAYTON ACT § 2(a), CONTRACT LAW)**

**6.**

While Videx believes that its CyberLock® system and customer support services are superior, CyberLock® competes with other lock systems, including conventional non-electronic locks, electronic locks, electronic keycard access systems and electronic punch code systems. Videx does not have sufficient market share or other indicia of market power to be able to raise prices or restrict output in the access control market in the United States, which are the relevant product market and geographic market, respectively.

**7.**

Videx distributes its CyberLock® products almost exclusively through independent resellers, of which there are hundreds. The resellers obtain contracts with end-users, which consist primarily of businesses that need access control systems for multiple entry points. Once a reseller obtains a contract to provide a CyberLock® system to an end-user, the reseller orders the equipment from Videx through individual purchase orders. Videx has no written distribution contracts with any CyberLock® resellers, who all have an at-will relationship with Videx.

**8.**

Videx imposes no investment requirements on its CyberLock® resellers. Resellers are not required to carry any CyberLock® inventory of original equipment or parts or to have any specific level of sales, service or support staff. A CyberLock® reseller can be successful with minimal staff to sell, service and support the equipment, particularly as the end-user has access to Videx's own customer support team that includes hardware and software support personnel. So far as Videx is aware, resellers earn profits starting with their first sale of a CyberLock® system and on each subsequent sale.

/////

/////

/////

**9.**

CAC has been a CyberLock® reseller.  As with all CyberLock® resellers, Videx has no written agreement with CAC, and the relationship of the parties is at-will.

**10.**

On September 11, 2006, Videx sent CAC a letter stating Videx's intent to end its business relationship with CAC, which Videx further confirmed by a letter dated October 10, 2006.  Videx took this action when it learned that CAC, without disclosing its actions to Videx, had been negotiating to hire one of Videx's employees, Robert French, while French was continuing to service CAC's account, thus creating an undisclosed conflict of interest for French.  The conflict could have been resolved had CAC simply disclosed its discussions with French.  As a result of the nondisclosure, Videx lost confidence in CAC and no longer wished to continue any business relationship with the reseller.  True copies of Videx's September 11, 2006 and October 10, 2006 letters are attached as Exhibits A and B, respectively.

**11.**

Videx's September 11, 2006 termination letter provided CAC with 111 days' notice, allowing CAC to continue to order CyberLock® products through December 31, 2006 for delivery no later than April 15, 2007.  The standard notice period in the industry for termination of a reseller relationship is 30 days, for manufacturers who have written distribution agreements.  Videx exceeded the industry standard by more than three times.

**12.**

As Videx does with any terminating reseller or any other reseller who presents a comparable risk of nonpayment, Videx placed CAC on a cash basis for all orders going forward from September 11, 2006.  This was a prudent business decision that would have a *de minimus* economic impact, if any, on CAC in making any close out orders through December 31, 2006.

/////

/////

Page 4 – **FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF (SHERMAN ACT § 2, CLAYTON ACT § 2(a), CONTRACT LAW)**

**13.**

On October 13, 2006, lawyers for CAC sent a letter to Videx contending that Videx's termination of CAC as a reseller violated federal antitrust and price discrimination laws as well as common contract law. Specifically, CAC's lawyers have asserted that Videx's refusal to deal with CAC on a going forward basis violates federal antitrust law, that placing CAC's orders on a cash basis constitutes unlawful price discrimination and that Videx's termination of CAC breached the parties' contractual relationship. A true copy of the letter asserting these claims is attached as Exhibit C.

**14.**

There is a live controversy between Videx and CAC which requires resolution by the Court, in that Videx contends that its termination of CAC as a CyberLock® reseller and actions relating to that termination are lawful, while CAC contends that the termination and related actions violate federal antitrust and price discrimination laws as well as the common law of contracts.

**FIRST CLAIM FOR RELIEF**

**(Declaratory Judgment – Monopolization)**

**15.**

Videx incorporates paragraphs 1 through 14.

**16.**

There is a controversy between Videx and CAC concerning whether Videx's termination of its relationship with CAC violates the prohibitions against monopolization in Sherman Act § 2. CAC contends that CyberLock® is a single product market that Videx controls and that Videx cannot "pick and choose" who gets to distribute CyberLock®. CAC further contends that its termination constitutes anti-competitive monopolization.

/////

/////

**17.**

Contrary to CAC's assertions, Videx contends that: (a) it is not even the sole source of supply of CyberLock®, as it places no restrictions on its resellers who are free to sell to CAC; (b) it does not possess monopoly power or even market power in any relevant market; (c) in any event, the mere termination of a single distributor among hundreds of CyberLock® distributors has no effect on competition in any relevant market; (d) terminating CAC does not constitute an act of monopolization, as it does nothing to constrain Videx's competitors; (e) Videx has the right to refuse to deal with whomever it pleases; and (f) Videx's loss of trust in CAC for placing a Videx employee in an undisclosed conflict of interest position constitutes a valid business reason for terminating the relationship.

**18.**

Videx is entitled to a declaration from this Court that its actions have not violated federal anti-monopolization laws under Sherman Act § 2.

**SECOND CLAIM FOR RELIEF**

**(Declaratory Judgment – Robinson-Patman Act)**

**19.**

Videx incorporates paragraphs 1 through 14.

**20.**

There is a controversy between Videx and CAC concerning whether placing CAC's post-September 11, 2006 orders on a cash basis constitutes price discrimination in violation of the Robinson-Patman Anti-Price Discrimination Law, 15 U.S.C. § 13(a). CAC asserts that Videx may not apply different credit terms to CAC than are available to other resellers and that placing CAC on a cash basis violates the Robinson-Patman Act.

/////

/////

/////

Page 6 – **FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF (SHERMAN ACT § 2, CLAYTON ACT § 2(a), CONTRACT LAW)**

**21.**

Contrary to CAC's assertions, Videx contends that (a) placing a terminated reseller on a cash basis is a sound credit judgment that the Robinson-Patman Act permits Videx to make; (b) in any event, the short-term nature of this cash basis arrangement falls within the *de minimis* exception under the Robinson-Patman Act; and (c) the short-term cash basis arrangement does not produce the harm to competition required to sustain a claim under Robinson-Patman Act § 2(a).

**22.**

Videx is entitled to a declaration from this Court that its credit policy towards CAC does not violate the anti-price discrimination laws under Robinson-Patman Act § 2(a).

### THIRD CLAIM FOR RELIEF

### (Declaratory Judgment – Breach of Contract.

**23.**

Videx incorporates paragraphs 1 through 14.

**24.**

There is a controversy between Videx and CAC concerning whether Videx's termination of its relationship with CAC constitutes a breach of contract. CAC contends that Videx does not have the unilateral right to terminate CAC as a reseller and that doing so breached the parties' contractual relationship.

**25.**

Contrary to CAC's assertions, Videx contends that (a) its relationship with CAC was at-will, entitling Videx to terminate it for any reason or no reason at all; (b) Videx gave CAC reasonable notice of the termination; and (c) its termination of the relationship was a valid exercise of its contractual rights.

/////

/////

Page 7 – **FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF (SHERMAN ACT § 2, CLAYTON ACT § 2(a), CONTRACT LAW)**

**26.**

Videx is entitled to a declaration that its actions have not breached any contractual obligation to CAC.

WHEREFORE, Videx prays for Judgment as follows:

1. Declaring that Videx's termination of CAC does not constitute a violation of the anti-monopolization laws under Sherman Act § 2, 15 U.S.C. § 2;

2. Declaring that Videx's placing of CAC on a cash basis does not constitute a violation of the anti price discrimination laws under Robinson-Patman Act § 2(a), 15 U.S.C. § 13(a);

3. Declaring that Videx's termination of CAC does not constitute a breach of contract;

4. Awarding Videx its costs and disbursements; and

5. Awarding Videx such other relief as the Court deems appropriate.

DATED this 8th day of January, 2007.

TONKON TORP LLP

By  */s/ Scott G. Seidman*
**Scott G. Seidman,** OSB # 83320
Direct Dial:    503.802.2021
Of Attorneys for Plaintiff Videx, Inc.

1600 Pioneer Tower
888 SW Fifth Avenue
Portland, OR  97204-2099
Telephone: (503) 221-1440
Facsimile: (503) 274-8779

033540\00002\734825 V001

Page 8 – **FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF (SHERMAN ACT § 2, CLAYTON ACT § 2(a), CONTRACT LAW)**